IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Gloria A.S., | ) |
|       Plaintiff, | ) ) ) |
| v. | ) Case No.: 23-cv-50116 ) ) Magistrate Judge Margaret J. Schneider |
| Frank Bisignano, Commissioner of Social Security,[1] | ) ) ) |
|       Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, Gloria A.S., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [9] is denied and the Commissioner's motion for summary judgment [14] is granted.

**BACKGROUND**

    A.    **Procedural History**

    On March 30, 2020, Gloria A.S. ("Plaintiff") protectively filed an application for disability and disability insurance benefits. R. 27. This application alleged a disability beginning on September 6, 2018. *Id.* The Social Security Administration ("Commissioner") denied her application on November 17, 2020, and upon reconsideration on August 19, 2021. *Id.* Plaintiff filed a written request for a hearing on September 18, 2021. *Id.* On January 11, 2022, a telephonic hearing was held by Administrative Law Judge ("ALJ") Jessica Inouye where Gloria A.S. appeared and testified. Plaintiff was represented by counsel. *Id.* At the hearing, an impartial vocational expert, Michael Stern, also testified. *Id.*

    On May 18, 2022, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 27-38. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-9. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's brief in support of her motion to reverse and remand the Commissioner's decision [9], the Commissioner's motion for summary judgment, and response to Plaintiff's brief [14], and Plaintiff's reply brief [15].

---

[1] Frank Bisignano is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

### B. The ALJ's Decision

In her ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 6, 2018. R. 29. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, status post right shoulder arthroscopy for rotator cuff sprain and impingement syndrome, osteoarthritis of the left knee, Achilles' tendinitis, heel spurs, and degenerative lumbar disc disease. R. 30. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 31-32.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, but with the following non-exertional limitations: Plaintiff can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl. Plaintiff was limited to frequent pushing and pulling with the right upper extremity, including the operation of hand controls and limited to frequent reaching and gross manipulation with the right upper extremity, and frequent handling and fingering bilaterally. R. 32-37. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a Slip Sorter (DOT# 209.687-022, SVP 3, sedentary, and as performed). The ALJ found that this past relevant work did not require the performance of work-related activities precluded by Plaintiff's RFC. R. 37-38. The ALJ did not need to reach step five. Therefore, the ALJ concluded that Plaintiff had not been under a disability under the Social Security Act at any time from September 6, 2018, through the date of decision, May 18, 2022. R. 38.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); see also *Warnell*, 97 F.4th at 1054; *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits.").

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues the ALJ: (1) committed reversible error in assessing Plaintiff's RFC; (2) failed to properly consider Plaintiff's subjective symptoms; and (3) failed to account for Plaintiff's limitations resulting from her mental impairments when determining her RFC. The Court concludes that the ALJ appropriately weighed and evaluated the medical opinions and Plaintiff's subjective symptoms and therefore the RFC assessment was well-supported by substantial evidence.

### A. Plaintiff's RFC

First, Plaintiff argues that the ALJ's RFC was not based on substantial evidence, as Plaintiff's medical records showed that she lacked the physical and mental capacity to perform full-time work, even at a sedentary level.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, an ALJ… must explain how [s]he has reached [her] conclusion." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotations and citation omitted). In a recent case, the Seventh Circuit has noted: "our review proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir 2025).

The ALJ's findings as to Plaintiff's RFC include Plaintiff's testimony at the hearing, a review of Plaintiff's physical and mental health treatment records (dating back to 2018), a summary of Plaintiff's abilities as to her activities of daily living, and consultative medical opinions. The ALJ's decision addresses Plaintiff's multiple, individual medical issues, but Plaintiff argues that the ALJ failed to sufficiently analyze the impact these medical conditions had on her ability to work.

First, as to Plaintiff's shoulder impairments, Plaintiff argues the ALJ failed to account for her post-operative limitations and, therefore, the RFC is unsupported. She argues the ALJ ignored records that reflected that she only made limited progress with physical therapy, had been discharged from therapy for her shoulder not because of medical improvement but because her workers' compensation denied additional visits, and she continued to experience pain and limited range of motion. [9], pp. 4-5. Second, regarding her left knee and ankles, Plaintiff argues the ALJ "glosse[d] over" her treatment, failed to account for records and treatment from orthopedic surgeon Dr. Whitehurst as well as Plaintiff's self-reports and testimony. Next, regarding Plaintiff's degenerative disc disease, she notes that the ALJ left relevant records out of the decision regarding her consultative examinations and reports from her primary care provider, Dr. Hansen. [9], pp. 5-7. Also, Plaintiff argues that her medical records showed that her condition continued to deteriorate, noting: "In her decision, the ALJ highlighted previous normal results and gait and did not address the worsening of her condition between November 2020 and July 2021." [9], p. 7. Finally, as to Plaintiff's non-severe impairments, Plaintiff argues that the ALJ failed to adequately evaluate her medical records in her finding that Plaintiff's finger impairments were non-severe. She argues that the ALJ failed to take into account records that note that Plaintiff's symptoms worsened when she presented to Dr. Karri in July 2021. As noted above, the court "will consider an ALJ's opinion to be adequately explained so long as it does not lack adequate discussion of the issues." *Warnell*, 97 F.4th at 1054 (citations and quotations omitted). Here, the Court finds that the ALJ's decision does not lack adequate discussion of the issues.

The ALJ's decision thoroughly reviews Plaintiff's medical records as to her limitations brought on by obesity, musculoskeletal issues (including Plaintiff's shoulder, knee, ankle, Achilles tendon, and degenerative disc disease), as well as her mental health concerns. Nearly six pages in the ALJ's decision are dedicated to Plaintiff's medical concerns. The decision reflects various details from the medical records and examinations, including post-surgical improvement to her shoulder with no swelling, healed surgical sites, 5/5 strength, and Plaintiff's compliance with all ordered physical therapy and self-reported 0/10 pain level. R. 33-34. Similarly, the decision notes that records from Plaintiff's orthopedist show left knee pain improvement (2/10 at rest and 4/10 with activity) and completed physical therapy. It also reflects treatment notes that Plaintiff is full weightbearing with no tenderness, no instability, and well-preserved strength. R. 34. As to Plaintiff's Achilles tendon surgery, the ALJ's decision notes medical records stating that Plaintiff was doing well with physical therapy and home exercises and was able to resume most activities without difficulty. R. 34. As to Plaintiff's degenerative disc disease, the decision notes strength at 5/5 in the upper and lower extremities, reflexes intact, sensation and gait normal, steady and independent. R. 34-35. Significantly, the medical records reflect that Plaintiff was released to a return to work without restrictions by her surgeon following her Achilles surgery (R. 425-27), and her orthopedist only recommended avoiding deep knee squats, kneeling for long periods of time, and high impact activities R. 118. However, the decision does not overlook Plaintiff's concerns – both contained within the medical records, as well as subjective. For example, the ALJ's decision recognizes that Plaintiff has documented trauma and subsequent surgery on her right shoulder and Achilles tendon with some ongoing pain. It further acknowledges that Plaintiff has intermittent pain in her lumbar spine and imaging showed some degenerative changes. The RFC takes into account the limitations recommended by Plaintiff's medical team.

Plaintiff's RFC accommodates Plaintiff by limiting her work to sedentary only, despite the

fact that on physical examination, four reviewing physicians assessed Plaintiff's work restriction from light exertional work to medium exertional work. R. 32-27, 88-90, 97-104. While Plaintiff takes issue with the ALJ's RFC determination, the record reveals no medical source that opined to limitations greater than those adopted by the ALJ. "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (unpublished) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)); *Gedatus*, 994 F.3d at 904 (finding the fact that no doctor offered any opinion setting sitting limits greater than those set by the ALJ a "fundamental problem"); *see also Hosea M. v. Saul*, No. 18 CV 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) ("[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'") (collecting cases). The ALJ's decision to limit Plaintiff's RFC to sedentary work was appropriately based on Plaintiff's medical records.

Additionally, "[the court] will affirm an ALJ's decision denying disability benefits if it is supported by substantial evidence—a low threshold. [The court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Casten v. O'Malley*, No. 24-1583, 2024 WL 4891188, at *2 (7th Cir. Nov. 26, 2024) (citations and quotations omitted). Here, it appears to the Court that Plaintiff is asking the Court to reweigh the evidence and supplant the ALJ's decision. As noted above, the Court finds that the ALJ's RFC was well-reasoned and thorough. The RFC takes into account Plaintiff's severe impairments and goes further than medical recommendations and limits Plaintiff to sedentary work. The ALJ's decision adequately considers the medical records and opinions and does not ignore Plaintiff's limitations. While Plaintiff may disagree with the outcome, the Court will not reweight the evidence and substitute its opinion for that of the ALJ.

### B. Plaintiff's Subjective Symptom Determination

Plaintiff also argues that the ALJ failed to support her decision to discount Plaintiff's subjective symptoms with substantial evidence as required by Social Security Ruling 16-3p. She argues the ALJ overstated her daily activities, diminished diagnostic findings, and improperly characterized her treatment as routine and conservative.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); Social Security Ruling 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original). Here, the ALJ's evaluation of Plaintiff's symptoms was adequately supported with evidence and explanation.

First, as noted above, the ALJ provides a thorough review of Plaintiff's medical history, taking into account concerns from Plaintiff, her medical providers, and the consultative examiners. Next, and importantly, the ALJ provided an RFC with more restrictive limitations – finding Plaintiff capable of sedentary work – than suggested by medical professionals. After a review of the record in light of the ALJ's decision, the Court cannot find that the ALJ diminished Plaintiff's diagnostic findings or improperly characterized her treatment as "routine" or "conservative." As to Plaintiff's argument that the ALJ overstates Plaintiff's activities of daily living, the decision reflects Plaintiff's characterization of her abilities. The ALJ's decision notes the following, taken from Plaintiff's Function Report:

> Overall, while there are some findings on exam which show slightly diminished strength, and some tenderness in the spine, shoulders, and knees consistent with her medical history, the claimant reports that she is still able to perform a variety of activities despite these conditions. In terms of daily activity, the claimant reports that she resides in a home with family, she generally dresses and bathes herself apart from some limitations bending and reaching behind herself and stepping over the tub. She dusts, sweeps, and takes care of plants. She goes out at least every other day, if not daily, she can go out alone, and she walks and drives a vehicle. The claimant can shop in stores for food and household products, she manages money, without any changes or issues, she socializes in person, on the phone, and via video chat, and she reads, watches television, and does word games, and she does not have to be reminded to go places or to do things. Moreover, the claimant reports that she follows written instructions and spoken instructions, and that she gets along with others generally.

R. 36.

Plaintiff argues that she testified to greater limitations at the hearing and, therefore, disagrees with the ALJ's assessment. However, the ALJ found Plaintiff's hearing testimony inconsistent with the information she provided in the Function Report. This was not improper. "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations and quotations omitted). The Court finds that the ALJ reasonably concluded that Plaintiff's range of activities of daily living, as noted by her in her Function Report, was not consistent with her testimony that she was more limited. The ALJ sufficiently evaluated Plaintiff's credibility. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (credibility determinations are given special deference and will not be overturned absent a finding that the ALJ's decision was patently wrong).

### C. RFC Regarding Plaintiff's Mental Impairments

Finally, Plaintiff argues that the ALJ erred in her RFC determination by failing to account for Plaintiff's mental health impairments. The totality of Plaintiff's argument is that the ALJ offered "no rationale as to how the mild mental impairments previously found were incorporated (or not incorporated) into her RFC." [9], p. 15. She states that this error is not harmless since the ALJ found Plaintiff capable of her past relevant work as a Slip Sorter, which is classified as an SVP 3,

and if she was limited to an SVP 2 (due to her mild mental impairments), Grid Rule 201.06 would apply establishing a status of disabled.

The Court notes that "[a]n impairment or combinations of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activity." 20 C.F.R. § 404.1522(a). The ALJ found that Plaintiff's mental impairments of generalized anxiety disorder, considered alone and in combination with other impairments, did not cause more than minimal limitations in her ability to perform basic work activities and, therefore, would be considered non-severe. R. 30. In her decision, the ALJ notes that she came to this conclusion after considering the four areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listings of Impairments at 20 C.F.R. Part 404, Subpart P., Appendix 1. The ALJ found that Plaintiff's mental impairments were mild and well-controlled. R. 30-31. In the RFC analysis, the ALJ notes that Plaintiff was capable of carrying out a variety of activities despite her impairments and this level of activity was not consistent with someone alleging a severe mental disability.

The medical records reflect that two reviewing psychologists found that Plaintiff's mental impairments were not severe:

> This claimant has a normal mental status exam and functional adls. She is anxious secondary to her medical issues which cause her pain and discomfort. It is reasonable for the claimant to have symptoms of anxiety secondary to life circumstances, physical issues, financial stressors and other situational concerns. Her MDI does not result in functional limitations; therefore, it is non-severe. R. 86 (Donna Hudspeth, PSYD).

> The claimant made good eye contact, was pleasant and seemed sincere. She had no difficulties producing or a standing normal conversational dialogue. The results of the exam suggests that the claimant's intellectual and cognitive abilities are adequate. She did not appear to be in any significant emotional distress but related that she has noticed more difficulty with sleeping and feeling restless than usual. She attributes this to frustration with pain and discomfort. The claimant is capable of managing finances should she be awarded benefits. The claimant's DSM-5 diagnosis is: 300.00 Unspecified Anxiety Disorder, exacerbated by physical discomfort…On reconsideration of all of the evidence, the claimant has a non-severe mental MDI at this time. R. 101 (Jeanne Yakin).

The ALJ relied on these reports in assessing Plaintiff's mental impairments and crafting an RFC. Additionally, Plaintiff does not allege that her mental health issues caused any specific limitation, she does not bring to the Court's attention any contrary medical opinion, she did not allege or testify to any mental limitation at the hearing, and she did not use the opportunity in her reply brief to address the Commissioner's response to this argument. The ALJ is obligated to consider "all of [the claimant's] determinable impairments of which [the ALJ] is aware, including [claimant's] medically determinable impairments that are not 'severe,' when [the ALJ] assess[ses] [claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(2). Here, the ALJ did just that. The regulations do not require that the ALJ then find that a non-severe impairment would impose

a work restriction. "Plaintiff is…correct that the ALJ was required at the RFC stage to consider limitations imposed by all of an individual's non-severe impairments. 20 C.F.R. § 404.1545(a)(2)-(3). But the ALJ was required to *consider* those limitations, not necessarily to include them in his finding of plaintiff's RFC. By discussing the evidence, including as it related to [plaintiff's] mental health history, and concluding that his limitations were not as severe as [plaintiff] described, the ALJ considered the limitations but found that they did not rise to the level of a functional limitation in the RFC assessment." *Rick M. v. Saul*, No. 20 CV 4369, 2021 WL 2588762, at * 5 (N.D. Ill. June 24, 2021) (emphasis in original). The Court finds that the ALJ properly considered Plaintiff's non-severe mental health impairments, and the RFC is supported by substantial evidence.

## CONCLUSION

For the reasons set forth below, Plaintiff's motion to reverse and remand the Commissioner's decision [9] is denied and the Commissioner's motion for summary judgment [14] is granted.

Date: June 6, 2025                                   ENTER:

*Margaret J. Schneider*
United States Magistrate Judge